**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **ABRAM J. HARRIS,** | * |
| Plaintiff, | * |
| v. | *   **Case No.: GJH-20-0920** |
| **WELLS FARGO CORPORATE OFFICE HEADQUARTERS, HQ,** | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Plaintiff Abram Harris, proceeding *pro se*, brought this civil action in the Circuit Court for Prince George's County against Defendant Wells Fargo Equipment Finance, Inc. ("Wells Fargo" or "Defendant"),[1] alleging that Defendant engaged in discrimination and fraud in the denial of an equipment loan application submitted by Plaintiff's company, Cool Air Express. ECF No. 1. Pending before the Court is Defendant's Motion Dismiss. ECF No. 10. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion to Dismiss is granted.

**I.   BACKGROUND[2]**

Plaintiff Harris owns a trucking company, Cool Air Express, which he hoped to expand by purchasing seven semi-trucks through Well Fargo's lease program. ECF No. 1-1 at 9, 13.[3]

---

[1] Defendant was incorrectly named in the Complaint as "Wells Fargo Corporate Office Headquarters, HQ," which is a non-entity.
[2] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 1-1, and are presumed to be true.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

Harris had communicated with Wells Fargo for over a year about this transaction. *Id.* at 6, 9. In fact, according to Harris, Wells Fargo had encouraged him to take advantage of this purchase/lease program and had indicated to Harris that he was a good candidate due to his credit score, experience in business, and high cash deposits. *Id.* at 9–10. Defendant also encouraged Harris to apply for a one hundred thousand dollar line of credit in order to expand his business. *Id.* Harris applied for the suggested loan, was told that he met all of Wells Fargo's loan requirements, and consequently was approved. *Id.* at 5, 9. However, when the money was not available on the day Wells Fargo had instructed Harris it would be, Harris contacted Wells Fargo and was informed that the loan had been declined. *Id.* at 9. Harris later received a letter from Patrick Clancy, Senior Vice President, explaining that his request for a loan had been denied due to a "[p]rior felony conviction of owner and principal." *Id.* Plaintiff alleges that this denial is the result of discrimination and fraud. *Id.* at 9.

Plaintiff Harris brought this action in the Circuit Court for Prince George's County on February 21, 2020. ECF No. 1-1 at 5. Defendant Wells Fargo removed the case to this Court on April 8, 2020.[4] ECF No. 1 at 1. On July 8, 2020, Wells Fargo filed the instant Motion to Dismiss, challenging Plaintiff's prudential standing and ability to proceed *pro se*. ECF No. 10. A notice was sent to Plaintiff from the Clerk of the Court, on July 8, 2020, notifying him of his right to file a response and advising him that failure to respond could lead to dismissal of his Complaint. ECF No. 11. Plaintiff has not filed a response.

## II.     STANDARD OF REVIEW

Defendant moves to dismiss this action for lack of standing. ECF No. 10-1 at 4–5. The

---

[4] Wells Fargo's removal was timely under 28 U.S.C. § 1446(b). A copy of the Summons issued on March 10, 2020, and Wells Fargo filed its Notice of Removal on April 8, 2020, within thirty days of the issuance of the Summons. ECF No. 1 at 1; ECF No. 1-1 at 2.

plaintiff in a federal action bears the burden of demonstrating that he possesses standing to pursue his claims in federal court. *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 188 (4th Cir. 2018). "The standing doctrine has both constitutional and prudential components." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). Only prudential standing is at issue in this case. Prudential standing consists of judicially imposed limits on the class of persons who may invoke the federal courts' decisional and remedial powers. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Among these limitations is the principle that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.*

"[C]onstitutional and prudential standing are governed by different standards of review." *Riston v. Klausmair*, No. RDB-17-03766, 2018 WL 4333752, *5 n.5 (D. Md. Sept. 11, 2018). "[C]onstitutional standing, which goes to subject-matter jurisdiction, generally falls under Rule 12(b)(1) while prudential standing is properly addressed under Rule 12(b)(6)." *Soderberg v. Pierson*, No. RDB-19-1559, 2020 WL 206619, at *5 (D. Md. Jan. 14, 2020); *see Bluefeld v. Cohen*, No. PX-15-2857, 2017 WL 1546406, at *4 n.2 (D. Md. Apr. 27, 2017), *aff'd*, 697 F. App'x 788 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1701 (2018); *Callender v. Callender*, No. TDC-15-4015, 2016 WL 3647613, at *3 (D. Md. June 30, 2016). Wells Fargo thus properly brought this Motion under Fed. R. Civ. P. 12(b)(6) and the Court will address Defendant's arguments under that standard.

When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true, and . . . construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Although a pleading called into question by

Rule 12(b)(6) does not need to provide "detailed factual allegations," something "more than labels and conclusions" is required, and there must be factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a pleading must contain "enough factual matter (taken as true) to suggest" the viability of plaintiff's claims. *Id.* at 556. Where "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Francis v. Giacometti*, 588 F.3d 186, 193 (4th Cir. 2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

*Pro se* complaints such as Harris' must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Despite this requirement, however, "[p]rinciples requiring generous construction of *pro se* complaints are not ... without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

### III. DISCUSSION

Defendant Wells Fargo argues that Plaintiff Harris lacks standing to bring this action to recover damages allegedly suffered by his business "as the result of the denial of *its* application for an equipment secured loan." ECF No. 10-1 at 4 (emphasis in original). The Court agrees.

As a preliminary matter it is clear that all of the harm allegedly caused by Wells Fargo's actions was to Harris' business, Cool Air Express. ECF No. 1-1 at 6 ("We lost work and

4

contracts with brokers valuing over $5 million."). Cool Air Express applied for the equipment secured loan to purchase seven semi-trucks. *Id.* at 9, 13. Wells Fargo's denial of the loan prevented the purchase of those trucks, which would have brought in between $20,000 and $60,000 a week to the business. *Id.* at 6. Additionally, relying on Wells Fargo's representations that the loan would be approved, Cool Air Express told the companies it worked for that it was anticipating purchasing new trucks and would be able to take on more work. *Id.* at 6. When Wells Fargo denied the equipment loan, however, Cool Air Express lost those contracts. *Id.* Finally, the purchase of the semi-trucks would have allowed Cool Air Express to provide jobs to seven new employees that it had already lined up. *Id.* But Wells Fargo's denial of the loan prevented Cool Air Express from creating those new positions. *Id.*

Despite the Complaint only alleging injury to Cool Air Express, Cool Air Express is not a party to this action. Harris is the sole plaintiff. But Harris lacks standing to bring this action in federal court. "Shareholders (or in the case of an LLC, its members) do not have standing to sue on the corporation's behalf." *Orgain v. City of Salisbury*, 521 F. Supp. 2d 465, 476 n.33 (D. Md. 2007); *see Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731 (2d Cir. 1987), *cert. denied*, 488 U.S. 825 (1988)) ("It is considered a 'fundamental rule' that '[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'"); *Bluefeld v. Cohen*, 2017 WL 1546406 at *2 (citing *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)) ("Generally, a shareholder lacks prudential standing to assert a direct claim for injuries to a corporation."). Thus, Wells Fargo's Motion to Dismiss is granted on this ground.

Even if Plaintiff had named Cool Air Express as a party to this action, the Court would

still grant Defendant's Motion to Dismiss because Plaintiff is proceeding *pro se*. "[T]he law permits corporations, and other artificial entities, to appear in federal courts *only* through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993) (emphasis added) (internal citations omitted); *see also Gilley v. Shoffner*, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004) ("'[T]he law is well established that a corporation cannot appear *pro se*.' . . . , [and] [c]ourts have extended this rule to apply to all forms of business entities." (internal citations omitted)). "Accordingly, a limited liability company can appear in federal court only through a licensed attorney because it is a business entity." *Gilley*, 345 F. Supp. 2d at 566. The Complaint filed in this action is not signed by an attorney and constitutes a *pro se* pleading. Therefore, even if Plaintiff identified Cool Air Express—which is an LLC, ECF No. 10-2—as a party to the Complaint, it could not appear in the case or seek relief *pro se*. Dismissal is also appropriate on this ground.

Finally, even if the Court liberally construed this action to be a derivative action, dismissal would remain appropriate. A derivative action "is an action brought by a shareholder in the name or right of a corporation to redress an injury sustained by, or to enforce a duty owed to, the corporation." *Rivers v. Wachovia Corp.*, 665 F.3d 610, 614 (4th Cir. 2011). A *pro se* plaintiff cannot maintain a derivative action. *Bluefeld*, 2017 WL 1546406 at *3. "This is because a derivative suit is a cause of action that belongs to the corporation, and pro se individuals may only represent themselves in actions before this Court." *Id.* (internal quotation marks and citations omitted); *see also* Loc. R. 101.1(a) ("Individuals who are parties in civil cases may only represent themselves."). Thus, even with a liberal construction of the Complaint, to which *pro se* plaintiffs are entitled, the instant Motion to Dismiss is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted without prejudice. A separate Order shall issue.

Date: <u>December     21, 2020</u>                         <u>     /s/                                              </u>
GEORGE J. HAZEL
United States District Judge